James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MGM RESORTS INTERNATIONAL,<br><br>Plaintiff(s),<br><br>v.<br><br>REGISTRANT OF LIVEMGM.COM,<br><br>Defendant(s). | Case No. 2:17-CV-695 JCM (GWF)<br><br>ORDER |

Presently before the court is plaintiff MGM Resorts International's motion for default judgment. (ECF No. 22).

**I.    Facts**

Plaintiff is a Delaware corporation with its headquarters in Las Vegas, Nevada. (ECF No. 9-1). It owns and operates over twenty resort properties in the United States and abroad. *Id.* Plaintiff and its predecessor entities have expended significant time and resources in developing and promoting the MGM trademark. *Id.* Pursuant to plaintiff's extended use of the MGM mark, it has acquired common law rights in the mark as related to hotel and casino services, entertainment services, and a variety of other goods and services. *Id.*

In addition to common law rights, plaintiff owns federal trademark registrations for the mark and similar marks. *Id.*; *see also* (ECF No. 9-1 Ex. A). Its primary website is <mgmresorts.com>, and it maintains other websites for its individual properties, such as <mgmgrand.com>. *Id.*

Defendant set up an English and Chinese language website, accessible to U.S. citizens from inside the United States, using the domain name <livemgm.com>. *Id.* When setting up the website, defendant used a host service called Domains By Proxy, which is an affiliate of GoDaddy.

1  *Id.* The Domains By Proxy service allows for users to remain anonymous. *Id.* Plaintiff alleges that defendant deliberately chose this domain host to mask its true identity and thwart detection. *Id.*

The domain name drives internet users to an online casino operated by defendant. *Id.* The online casino has no official relationship with plaintiff. *Id.* However, the website uses plaintiff's MGM marks (including its distinctive lion's roar mark) and indicates that it is an online casino operated by MGM through, amongst other false portrayals, a copyright notice at the bottom of the homepage, stating "Copyright © MGM Resorts International. All Right [sic] Reserved."[1] *Id.*

On March 9, 2017, plaintiff filed its complaint. (ECF No. 1). On April 7, 2017, the court permitted plaintiff to serve the complaint and summons on defendant via email to livemgm@domainsbyproxy.com.[2] (ECF No. 11). Defendant did not answer or otherwise respond to the complaint. Plaintiff moved the clerk for entry of default (ECF No. 20), which the clerk granted (ECF No. 21).

**II.   Legal Standard**

Obtaining a default judgment is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule."

Courts considering a motion for default judgment must ensure that they have jurisdiction over the action, which includes subject matter jurisdiction over the claims and personal jurisdiction over the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (holding that a judgment without

---

[1] For additional information regarding the website's interface and functionality, *see* (ECF No. 9-1) (Declaration of April D. Chaparian), *and* (ECF No. 22) (plaintiff's motion for default judgment).

[2] When a user sets up a domain name via Domains By Proxy, the company provides the user with a proxy email address. (ECF No. 9-1). The proxy email address forwards all email it receives to the email address the user submitted to Domains By Proxy when the user created its account. *Id.*

jurisdiction is void). The choice whether to enter a default judgment lies within the discretion of the court. *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980).

In the determination of whether to grant a default judgment, the court should consider the seven factors set forth in *Eitel*: (1) the possibility of prejudice to plaintiff if default judgment is not entered; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. 782 F.2d at 1471–72. In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(d).

**III. Discussion**

*a. Jurisdiction over the claims*

Plaintiff's motion first addresses whether the court has subject matter and personal jurisdiction over the claims and parties.

*i. Subject matter jurisdiction*

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, the complaint alleges claims for relief pursuant to the Lanham Act, 15 U.S.C. §§ 1114 and 1125. *See* (ECF No. 1) (plaintiff's complaint). Accordingly, the court has subject matter jurisdiction over the claims.

*ii. Personal jurisdiction*

Plaintiff bears the burden of demonstrating that its allegations establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Where a state has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the due process clause, as Nevada does, a court need only address

federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

An assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Two categories of personal jurisdiction exist: (1) general jurisdiction; and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

Specific jurisdiction arises where sufficient contacts with the forum state exist such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If a plaintiff meets this burden, a defendant hoping to defeat jurisdiction must show that the court's exercise of jurisdiction would be unreasonable. *Id.*

Here, plaintiff has demonstrated a prima facie case for exercising specific jurisdiction over defendant as it pertains to the causes of action in plaintiff's complaint. The complaint alleges that defendant used <livemgm.com> to operate an online casino with the intention of masquerading as an affiliate of plaintiff and usurping plaintiff's brand recognition. (ECF No. 1). Defendant did so

James C. Mahan
U.S. District Judge

- 4 -

while making its website accessible users in the United States, including Nevada.[3] (ECF No. 1-3); (ECF No. 9-1). This satisfies the requirements for asserting specific personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 802.

Further, the exercise of jurisdiction in this case is reasonable. Defendant is using plaintiff's internationally recognized branding to attract gambling customers. As defendant has defaulted in this case and not otherwise appeared, the presumption of reasonableness that arises when a plaintiff meets its burden under the first two prongs of the test for specific jurisdiction is unrebutted in this case. In sum, the court has specific jurisdiction over defendant as it relates to plaintiff's claims.

*b. The merits of plaintiff's motion for default judgment*

Plaintiff filed a motion for entry of clerk's default as to defendant (ECF No. 20), and the clerk subsequently entered default, (ECF No. 21). Therefore, plaintiff has satisfied subsection (a) of Federal Rule of Civil Procedure 55.

The first *Eitel* factor weighs in favor of default judgment in this case. Defendant has failed to respond or appear in the case, which prejudices plaintiff's ability to pursue its claims on the merits, permanently enjoin defendant's infringing conduct, and seek recovery of damages. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

The second and third *Eitel* factors favor plaintiff in this case. Plaintiff's complaint adequately alleges that Defendant registered <livemgm.com> with a bad faith intent to profit from plaintiff's MGM Marks; that plaintiff's MGM marks were distinctive when defendant registered <livemgm.com>; and that defendant's domain name, <livemgm.com> is confusingly similar to plaintiff's federally registered, incontestable, MGM marks. Plaintiff also adequately alleges that Plaintiff owns valid federal trademark registrations for its MGM marks and that defendant's use of confusingly similar marks on the <livemgm.com> website is likely to cause consumer confusion. Accordingly, these factors favor plaintiff. *See Eitel*, 782 F.2d at 1471.

---

[3] This court disagrees with plaintiff's assertion that defendant's intentional use of a trademark that it knows belongs to plaintiff satisfies the test for specific jurisdiction. *See Bellagio v. Bellagio Car Wash*, 116 F. Supp. 3d 1166 (D. Nev. 2015).

James C. Mahan
U.S. District Judge

- 5 -

The fourth *Eitel* factor, which compares the amount of money at stake to the seriousness of defendant's conduct, supports a default judgment in favor of plaintiff. "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, the complaint sufficiently alleges willful and egregious acts of cybersquatting and trademark infringement which caused plaintiff significant harm. Defendant's use of <livemgm.com> was intended to impermissibly profit from plaintiff's marks. A permanent injunction, transfer of the domain name, and statutory damages are proportional to the harm caused by defendant's conduct. Therefore, this factor favors an entry of default judgment. *See Eitel*, 782 F.2d at 1471.

The fifth *Eitel* factor, the possibility of a dispute concerning material facts, favors plaintiff. Here, there is no dispute concerning the material facts of the case. Plaintiff has adequately presented the interface of defendant's website, which contains clearly infringing material on its face. Further, "[o]nce the clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *O'Brien v. United States of America*, no 2:07-cv-00986-GMN-GWF, 2010 WL 3636171, at *1 (D. Nev. Sept. 9, 2010). Therefore, the court must accept all well-pleaded factual allegations in plaintiff's complaint as true. Considering the well-pleaded factual allegations, there are no disputes of material fact regarding defendant's infringing conduct. Accordingly, the fifth *Eitel* factor favors plaintiff. *See Eitel*, 782 F.2d at 1471–72.

The sixth *Eitel* factor considers excusable neglect. 782 F.2d at 1472. The factor favors entry of default judgment when the defendant has been properly served or plaintiff shows that defendant is aware of the lawsuit and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Here, plaintiff properly served defendant, who has failed to answer or otherwise appear. Accordingly, the courts holds that plaintiff has demonstrated defendant's failure to appear is not the result of excusable neglect. *See id.* The sixth *Eitel* factor favors default judgment in this case. *See Eitel*, 782 F.2d at 1472.

James C. Mahan
U.S. District Judge

The seventh *Eitel* factor considers the strong policy favoring case disposition on the merits. *Id.* While public policy generally favors disposition on the merits, default judgment is proper when a defendant deliberately chooses not to defend the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Defendant's conduct in this case has made it impractical, if not impossible, to adjudicate this case on the merits. Accordingly, default judgment is appropriate. *See Eitel*, 782 F.2d at 1472; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

After considering the foregoing, the court finds good cause to grant plaintiff's motion for default judgment. Moreover, plaintiff has properly complied with Rule 55. Therefore, the court will grant plaintiff's motion for default judgment as to counts one, two, and three of plaintiff's complaint.

### c. *The requested award*

In the instant motion, plaintiff seeks a permanent injunction against defendant, statutory damages, and the transfer of the domain name <livemgm.com> to MGM Resorts International.

### i. *A permanent injunction*

The Lanham Act gives district courts "the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." 15 U.S.C. § 1116; *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendants' continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

A party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,* 762 F.3d 867, 879 (9th Cir. 2014) (citations omitted). The decision to grant or deny permanent injunctive relief

James C. Mahan
U.S. District Judge

- 7 -

is an act of equitable discretion by the district court. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (citation omitted).

Traditionally, in the trademark context, "once the plaintiff [had] establishe[d] a likelihood of confusion, it [was] ordinarily presumed that the plaintiff [would] suffer irreparable harm if injunctive relief [were] not granted." *See Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 n. 3 (9th Cir.1989) *overruled by eBay,* 547 U.S. at 393.

This presumption changed with the Supreme Court's decision in *eBay*. *See Herb Reed Enter., Inc. v Monroe Powell's Platters, LLC,* 25 F. Supp. 3d 1316, 1327 (D. Nev. 2014). Now, "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action" under the Lanham Act. *Id.* "[C]onclusory or speculative allegations are not enough." *Id.* at 1250.

In *Toyo Tire and Rubber Co. Ltd. V. Kabusikiki Kaisha Toyo Nihoon Rubber Corp.*, no. 2-13-cv-01847-JAD-VCF (D. Nev. Oct. 26, 2015), another court in this district held that plaintiff demonstrated irreparable harm based on uncontracted allegations in its complaint (which must be taken as true) and an affidavit offered by plaintiff's director of marketing demonstrating plaintiff's investment in its distinctive marks and the harm caused by defendant's infringement.[4] *See id.* at *6.

Here, plaintiff has demonstrated that a permanent injunction is warranted. The undisputed facts in plaintiff's complaint and associated declarations demonstrate that plaintiff has suffered and will continue to suffer irreparable injury and harm to the goodwill and reputation it has established over the last forty-five years in its marks absent permanent injunctive relief. *See, e.g. Toyo Tire*, no. 2-13-cv-01847-JAD-VCF, at *6 (holding, post-*Herb Reed*, that plaintiff has demonstrated irreparable harm based on uncontracted allegations in its complaint and evidence offered via a marketing director's affidavit). A permanent injunction will prevent defendant from continuing to infringe on plaintiff's protected marks.

---

[4] The court also considered the potential difficulty of enforcing a monetary judgment against defendant (which is also present in this case) along with the lack of indication that defendant will cease its infringing activity absent injunctive relief. *See id.* at *8.

James C. Mahan
U.S. District Judge

- 8 -

Further, plaintiff introduced evidence that plaintiff's potential customers are aware of the website and had negative experiences which they in turn associated with plaintiff. *See* (ECF No. 9-1) (discussing a potential customer who could not recover $10,000 from defendant's website and emailed plaintiff regarding the same). This demonstrates irreparable harm that could occur in the future absent injunctive relief, and is sufficient to demonstrate the need for a permanent injunction. *See Herb Reed*, 25 F. Supp. 3d at 1249.

Plaintiff has satisfied the other elements necessary for the court to grant injunctive relief in this case. Plaintiff's motion demonstrates that that future remedies at law are inadequate. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendants' continuing infringement.").

Further, the balance of hardships favors plaintiff. Plaintiff suffered damage to its distinctive marks and reputation as a result of defendant's conduct, and an injunction would do no more than require defendant to comply with the law. Finally, the public interest favors upholding intellectual property laws and preventing consumer confusion. *See Herb Reed*, 25. F Supp. 3d at 1327.

    *ii.    Statutory damages*

Pursuant to 15 U.S.C. § 1117(d), a prevailing party in a cybersquatting action may recover "instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." Courts consider multiple factors when awarding statutory damages pursuant to 15 U.S.C. § 1117(d), such as "the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a serial cybersquatter . . . and other behavior . . . evidencing an attitude of contempt towards the court or the proceedings." *Digby Adler Grp., LLC v. Imagine Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1108 (N.D. Cal. 2015).

"Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft*

*Corp. v. Nop,* 549 F.Supp.2d 1233, 1238 (E.D. Cal. 2008). Other courts in this district have imposed the statutory maximum in similar cybersquatting cases. *See MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, no 2-14-cv-01613-GMN-VCF, 2015 WL 5674374, at *12 (D. Nev. July 8, 2015) (adopted by *MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, no 2-14-cv-01613-GMN-VCF, 2015 WL 5682783) (D. Nev. Sept. 23, 2015)); *Toyo Tire*, no. 2-13-cv-01847-JAD-VCF, at *3, 8.

Here, plaintiff seeks the statutory maximum of $100,000 for the infringing domain name. Plaintiff began using its marks in the early 1970's, and defendant's conduct demonstrates an attempt to siphon these years of brand development for defendant's own personal gain. Defendant's conduct demonstrates seriousness and willful violation of the Lanham Act, which supports an award of statutory damages. *See Digby*, 79 F. Supp. 3d at 1108.

Given that the information needed to prove actual damages is within defendant's control, and defendant refuses to defend this lawsuit or otherwise appear, the court holds that statutory damages of $100,000 are appropriate in this case.

       *iii.*    *Transfer of the domain name <livemgm.com>*

"In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

Plaintiff requests the court order transfer of the domain name <livemgm.com> to plaintiff. The court finds that a transfer of the domain name to the plaintiff is appropriate in this case.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that plaintiff's motion for default judgment (ECF No. 22) be, and the same hereby is, GRANTED consistent with the foregoing.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that plaintiff shall prepare and file an appropriate judgment for the court's signature consistent with the foregoing within twenty-one (21) days of the entry of this order.

DATED January 23, 2018.

_____
UNITED STATES DISTRICT JUDGE